## Mahan License

*Edward G. Petrillo,* for appellant.

*William A. Bevevino,* for Commonwealth.

WOLFE, P. J., September 28, 1970.—Before the court is an appeal by Emory J. Mahan from order of the Secretary of Revenue suspending his driving privileges for a period of 30 days as a result of a conviction on February 17, 1970, of violating section 1019(a) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1019.

The court granted a supersedeas and the matter was heard de novo and is now ready for decision.

The Commonwealth's evidence reveals that on February 5, 1970, Trooper Carl Wetzel, of the Pennsylvania State Police, was on duty at about 10 p.m. and was patrolling on Pennsylvania Route 97 at a point on said route 250 feet south of Interstate 90 at which is located a Holiday Inn.

The testimony shows, and it is not contradicted by appellant, that he operated his motor vehicle across a medial strip dividing a four-lane highway at the aforesaid location. The medial strip is 10 feet to 12 feet wide and 6 inches high with slanting sides. The appellant paid the fine imposed of $5 and subsequently received his notice of suspension.

Appellant's position is he was not aware that he had crossed the medial strip until his car had gone over it, as it was covered with snow and there were other automobile tracks traversing over the strip and that therefore he did not intentionally do so.

All of the evidence indicates that the Holiday Inn from which appellant was making his exit is located about 500 feet west from Route 97 and an operator, traveling east to approach Route 97 may first observe a "One-way" sign located about 10 feet to the north and directly east of a service station and situate on the extreme east berm of the four-lane highway. Another sign, "No U-Turn," is located approximately 100 feet to the south on Route 97 and situate on the extreme east berm of the four-lane highway.

An operator of a vehicle traveling from the Holiday Inn easterly with the intention to travel north on Route 97, must, by virtue of the aforesaid signs and medial strip, first travel south on Route 97 for a short distance of approximately 100 feet then turn north where there is a break in the medial strip. Appellant did not do this but continued his direction of travel easterly, exiting from the inn, across the medial strip and then turned northerly.

Appellant's position is that he was not familiar with the area but that he had seen the "One-way" sign as well as the "No U-Turn" sign but did not recognize it as applying to him but rather his interpretation of the "One-way" sign was to direct traffic leaving the service station.

There is no evidence at the time in question that there were other vehicles traveling on the four lanes or that there were any pedestrians about.

Prior to the amendment of June 3, 1968, to section 1019(a), the courts interpreted a "safety zone" as an area within which pedestrians may wait for public transportation with reasonable assurance that they will not be run down by passing traffic, and its existence is notice to drivers of vehicles that they must not invade the area or come so unreasonably close that life or limb of a person therein will be in danger: Derricotte v. Ulitsky, 353 Pa. 309, 311.

This act, as last amended, defines a "safety zone" as any highway which has been divided by two or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic and every vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic-control devices or police officers. The act further provides that no vehicle shall be driven over, across or within any such dividing space, barrier or section except through an opening in such physical barrier or dividing section or space or at a crossover or intersection as established.

Obviously, the reason for such "safety zones" is for public pedestrian safety and for the proper regulation of traffic.

There is a serious question in the court's opinion whether the aforesaid signs, as erected, give an operator sufficient notice as that operator leaves the

Holiday Inn traveling easterly to approach Route 97. It would seem a simple matter to the court for the Highway Department to erect a sign indicating "medial strip" or "safety zone." Instead, the Secretary of Highway has elected to erect a "One-way" sign situate at a place other than directly in front of the driver as he approaches Route 97.

Be that as it may, still, the violation occurred and the question before this court is whether the secretary abused his discretion in the suspension of appellant's license for a period of 30 days. There was no evidence submitted that appellant had any prior violations of The Vehicle Code or that, at the time in question, he was driving in a careless or reckless manner or, as heretofore stated, there were any other vehicles or pedestrians in the area. Although on the report to the secretary it may well appear to him that a 30-day suspension was reasonable, however, on such appeal the court is required to grant a hearing de novo and to review the facts in detail and make a determination if the suspension should be sustained or reversed after a full hearing. There is no question that there are facts emitted at this hearing that the secretary would not have before him in making his determination.

Under all of the facts in this case, this court is of the opinion that appellant could have been misled by the nature and location of the signs erected at the place in question, and, in addition, the violation was a technical one. Also, the court is of the opinion that a suspension for a lesser period would be in order considering all of the facts and circumstances in the case but the court does not have this discretion, as it is well settled that even though the court may be of the opinion that the penalty is too severe, the court is required either to sustain or reverse the action of the secretary and may not reduce it: Commonwealth v.

Zeigler, 2 Adams 39 (1961); Commonwealth v. Rosenberger, 28 Beaver 101 (1967).

In the instant case, the court is of the opinion that the violation in question was technical, and it would be unconscionable for the court to sustain the 30-day suspension and, therefore, the court makes the following order:

## ORDER

And now, September 28, 1970, the order of the secretary suspending the operator's privileges of Emory J. Mahan is reversed and the operating privileges of Emory J. Mahan are reinstated.